## THE MARYLAND CLAY CO. *vs.* CHAS. W. SIMPERS AND M. RUSSELL.

*Vendor Entitled to Specific Performance of Contract to Buy Land—Mutuality and Fairness of Contract—Remedy at Law—Damages.*

Plaintiffs, the owners of a tract of land, signed an agreement giving to defendant's agent for a certain sum an option to buy the land at a designated price within a time limited. The consideration for the option was not paid and the writing was not delivered. Afterwards one of the owners notified defendant's agent that he would not sell unless an additional sum be paid to him. Defendant company authorized its agent to accede to this demand and another contract was made which provided that if the option was exercised the additional sum would be paid. The option was taken up and the price mentioned in the first contract was paid, but the defendant refused to pay the additional sum mentioned in the second contract. *Held,* upon the facts, that the agreement to pay the additional sum was made fairly and *bona fide* and is binding upon defendant.

Equity will not enforce specific performance of a contract unless it be mutual and obligatory upon both parties, so that each has a right to require such performance from the other.

When a purchaser refuses to fulfill his contract to buy land, the vendor is entitled to maintain a bill for specific performance under which the purchaser will be ordered to accept a conveyance and pay the contract price, since an action at law to recover damages for breach of the contract does not afford an equally complete and adequate remedy.

In an action for breach of a contract to buy land the measure of damages is the difference between the actual value of the land sold and the price defendant agreed to pay.

Appeal from a decree of the Circuit Court for Cecil County (PEARCE, C. J., MARTIN and BROWN, JJ.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, SCHMUCKER and JONES, JJ.

*Richard S. Culbreth* (with whom was *John S. Wirt* on the brief), for the appellant.

The only agreement the appellant ever made with Simpers and Russell was the one which provided for the purchase of the property at and for sixteen hundred dollars ($1,600.) This agreement was fully performed. The record discloses also that the only agreement that was not performed was the private agreement of the appellant with Simpers, which provided for the payment to *Simpers* of twenty-nine hundred dollars ($2,900) as an additional consideration for *his* interest. There is no other agreement than this one to be enforced, and had the bill of the appellees been filed to enforce the performance of this agreement, as the agreement of the appellant with Simpers, the agreement, assuming the Court had jurisdiction, could have been " established " as " set up." That this Court would affirm a decree enforcing the specific performance of that agreement, the appellant, relying upon the well-settled principles of equity denies ; and it insists that Simpers would be left to an action at law on the agreement against the appellant, as his remedy, and that Russell would be left to an action at law against Simpers, as his remedy. Specific performance will not be decreed of a mere contract for the payment of money.

It is the established practice in this State, where land has been conveyed by a deed, and possession thereof delivered by the vendor, for the vendor to proceed at law for the purchase money, and either to declare specially on the contract of sale, or on the common counts ; " the law equally implying a promise to pay for land sold and delivered, as it does in the case of the sale of goods, wares and merchandise." *Wolf* v. *Hauver*, 1 G. 84; *Morgan* v. *Bitzenberger*, 3 G. 350; *O'Neale* v. *Lodge*, 3 H. & McH. 433; *Higdon* v. *Thomas*, 1 H. & G. 139.

*Albert Constable* and *W. S. Evans*, for the appellees.

Defendant's argument below was directed to the point that a *vendor* cannot have specific performance, that his only remedy is an action at law for the purchase money. That defend-

ant is wrong in this contention, there can, we submit, be no doubt. *Fry on Specific Performance*, sec. 50 (2nd Eng. ed.); *Lewis* v. *Lord Lechmere*, 10. Modern, 503; *Eastern Counties Railway Co.* v. *Hawkes*, 5 H. L. Cases, 331, 259, 376; *Old Colony R. R.* v. *Evans*, 6 Gray, 25; *Hopper* v. *Hopper*, 16 N. J. Eq. 147; *Shrœpel* v. *Hopper*, 40 Barb. 425; *Finley* v. *Aiken*, 1 Grant, 83 (Penn.); *Pomeroy on Specific. Performance*, sec. 6; *Canton Co.* v. *B. & O. R. R.*, 79 Md. 424; *Wilson* v. *Blount*, 93 Md. 30.

McSHERRY, C. J., delivered the opinion of the Court.

. , This is an appeal from the equity side of the Circuit Court for Cecil County. The bill of complaint was filed by the vendors of real estate to compel the vendee to specifically perform the contract by paying the balance due on the purchase price and by accepting a deed for the land. The questions raised are, first, whether the contract set up in the bill and proved by the evidence was fair and *bona fide* and founded on a valuable consideration, and, secondly, whether a Court of equity has jurisdiction to decree, at the suit of the vendor, the specific performance of a contract for the sale of land. The first is largely a question of fact and as its discussion at length can serve no useful purpose we will state briefly the result reached from an examination of the evidence rather than the details of the evidence upon which that result is based.

The appellant company carried on the business of mining, refining and marketing kaolin near North East in Cecil County. There was considerable prospecting for kaolin in the vicinity of the appellant's works and the company being satisfied that there were valuable deposits under certain land owned by the appellees, proceeded to secure an option to purchase a parcel of nine acres. Mr. Falls, an attorney at law, was employed by the appellant's manager to get in the name of the attorney an option on nine acres of land adjoining the company's works and owned by the appellees. On October the nineteenth, eighteen hundred and ninety-seven, Mr. Falls prepared a contract under seal which was signed by the appellees and by

which the latter agreed to give to Mr. Falls for the considera-
tion of twenty dollars an option to buy the nine acres for the
sum of sixteen hundred dollars, the option to be exercised
before noon on the nineteenth day of November following.
This contract, though signed, was not delivered because the
twenty dollars named as the consideration for the option were
not paid.   Later Mr. Simpers, one of the owners of the land,
notified Mr. Falls that he would not deliver the option con-
tract unless Mr. Falls would agree to pay Simpers twenty-nine
hundred dollars additional.   Mr. Falls not feeling that he was
authorized to accede to this demand declined to do so without
first consulting the company's manager.   He at once saw the
manager and laid the matter before him and the latter instructed
Mr. Falls to close the negotiation and to pay Simpers the ad-
ditional twenty-nine hundred dollars.   Thereupon a further
agreement under seal was prepared and it was signed by Falls
and Simpers.   By the terms of this second agreement it was
provided that if a purchase were made under the option Sim-
pers was to receive twenty-nine hundred dollars for his interest.
The sixteen hundred dollars named in the option and the
twenty-nine hundred dollars specified in the supplemental
agreement made the purchase price of the nine acres forty-five
hundred dollars.   The supplemental agreement though signed
by Simpers and not by Russell was in fact made in behalf of
both.   The sum of twenty dollars stated as the consideration
for the option was paid and the two agreements were delivered.
On November the eleventh, Mr. Falls exercised the option,
paid the appellees eight hundred dollars and took from them
a deed in his own name for the land.   Later on the company
paid the other eight hundred dollars, making altogether the
sixteen hundred dollars called for in the option, and requested
Mr. Falls to convey the property to it, but this he refused to
do unless the remaining twenty-nine hundred dollars were first
paid.   Subsequently a deed was executed by the appellees and
by Mr. Falls conveying the property to the company and was
placed in the hands of Mr. William S. Evans to be delivered
upon the payment of the remaining twenty-nine hundred dol-

lars.   This sum the company neglected to pay and thereupon the bill of complaint now before us was filed.   The bill prays that the company may be required to pay the balance due and to accept a conveyance of the nine-acre tract of land.

It is not pretended that there was any fraud or deception practiced in making the contract and there is no reason to question the good faith of the vendors.   The terms of the written contracts are plain and unambiguous.   The price stipulated to be paid may be large, but it was distinctly agreed upon.   The contract alleged in the bill and the one proved are identical.   Part of the consideration has been paid and there is no valid reason assigned why the residue should not be.   We may therefore pass from the consideration of the first inquiry without further observations.

Secondly.  There is no doubt that a Court of equity has jurisdiction to enforce the performance of a contract for the sale of land.   The books are full of such cases.   "While specific execution is a matter not of absolute right in the party but of sound discretion in the Court, yet if a contract respecting real property is in writing, and is certain, fair in all its parts, for an adequate consideration, and capable of being performed, it is as much a matter of course for a Court of equity to decree specific performance of it, as it is for a Court of law to give damages for a breach of it.   *Smoot et al.* v. *Rea & Andrews*, 19 Md. 398;" *Popplein et al.* v. *Foley*, 61 Md. 385.   If the purchaser may compel the vendor by such a proceeding to convey the land, there ought to be no reason why the vendor cannot require the purchaser to pay the stipulated price and to accept a conveyance.   One of the essential requisites of a contract that may be enforced is mutuality.   No Court of equity will decree the specific performance of a contract if the contract be not mutual and fair in all its parts.   "I have no conception," said LORD REDESDALE in *Lawrenson* v. *Butler*, 1 Sh. & Lef. 18, "that a Court of equity ought to decree a specific performance in a case, except where both parties had, by the agreement, a right to compel a specific performance, according to the advantage which they might

be supposed to have derived from it, because, otherwise, it would follow, that the Court would decree a specific performance, where the party called upon to perform might be in the situation, that if the agreement was disadvantageous to him, he would be liable to the performance, and, yet, if advantageous to him, he could not compel a performance." Our predecessors stated in *Geiger* v. *Green*, 4 Gill, 476, that "It is now established, that unless there is to be found in the contract, this essential ingredient of mutuality, a Court of equity will not compel its specific execution." In commenting on this last cited decision CHANCELLOR JOHNSON said in *Duvall* v. *Myers*, 2 Md. Ch. Dec. 405, "As I understand the decision, the right to a specific execution of a contract, so far as this question of mutuality is concerned, depends upon whether the agreement itself is obligatory upon both parties, so that upon the application of either, against the other, the Court would coerce a specific performance." It can scarcely be said that a contract is mutual—that it operates alike on both parties—when one of them to it may invoke a remedy for its non-fulfillment which is denied to the other for a similar breach. If the purchaser may invoke the jurisdiction of equity, as he undoubtedly may, because he is entitled to have the specific land he has bought; then the vendor is equally entitled to appeal to the same jurisdiction to compel the purchaser to take the land and to pay the price agreed to be paid. "Though the vendee's duty in these contracts generally consists in nothing beyond the payment of money, for which the law would seem to afford a sufficient remedy, yet the vendor has a right, in a Court of equity, to compel him to comply with his agreement by accepting the land and paying for it. This is permissible, under the equitable doctrine that the enforcement of contracts must be mutual, and that where the vendee would have a right to a decree compelling the conveyance of the land to him, his vendor must likewise be permitted in equity to compel the acceptance of his deed and the payment of the consideration for it." 22 *Am. & Eng. Ency. L.*, 947. In other words, if one of the parties to a contract

for the sale of land has the right to its specific execution, then both have that right; and if one has not that right then neither has the other. This remedy has been applied in Maryland when invoked by the vendor of land. *Wilson v. Blount*, 93 Md. 30; *Canton Co.* v. *B. & O. R. R. Co.*, 79 Md. 424.

It is the established doctrine that specific execution of a contract will not be decreed where there is an adequate and complete remedy at law by way of compensation in damages. *Fardy et al.* v. *Williams*, 38 Md. 502. But it is equally well settled in Courts of equity " that in general the legal remedy of damages *is* inadequate in all agreements for the sale or letting of land, or of any estate therein ; and therefore in such class of contracts the jurisdiction (of equity) is always exercised, and a specific performance granted, unless prevented by other and independent equitable considerations which directly affect the remedial right of the complaining party." 1 *Pom. Eq.*, sec. 221. The reason for this rule is obvious. The measure of damages for a refusal to take the land and to pay the price agreed to be paid would, in an action at law, be the difference between the real value of the land sold and the contract price. "The measure of damages is the injury sustained by the plaintiff by reason of the defendants not having performed their contract. The question is, how much worse is the plaintiff by the diminution in the value of the land, or the loss of the purchase money, in consequence of the non-performance of the contract ? " *Laird* v. *Pim*, 7 M. & W. 474, cited in *Wood's Mayne on Damages*, sec. 243. Now, the difficulty of proving the actual value of the land makes the standard by which the vendor's damages are to be measured exceedingly uncertain. The appellant company has not taken possession of the land and hence the vendor cannot proceed at law for the recovery of the purchase money or declare specially on the contract of sale, but would be remitted to an action for a breach of the contract. In this situation, confronted in a Court of law by a standard as a measure of damages which would be uncertain in its result for such a breach, there can be no adequate rem-

edy for the vendor other than in a Court of equity where the purchaser may be decreed to accept a conveyance and to pay the amount which he has contracted to pay.   In the language of LORD SELBORNE, " The principle which is material to be considered is, that the Court gives specific performance instead of damages only when it can by that means *do more perfect and complete justice.*"   *Wilson* v. *Northampton, &c., Ry.*, L. R., 9 Ch. 284.   " Where land, or any estate therein, is the subject-matter of the agreement, the inadequacy of the legal remedy is well settled, and the equitable jurisdiction is firmly established."   3 *Pom. Eq.*, sec. 1402.

The decree appealed from directed the appellant company to pay the residue of the purchase money with interest and costs and upon payment thereof the Clerk of the Court was instructed to deliver to the appellant the deeds conveying the property.   For the reasons we have assigned there was no error in the decree, nor in the order of the Court in overruling the demurrer to the bill of complaint ; and it follows that the decree must be affirmed.

*Decree affirmed with costs.*

(Decided November 20th, 1902.)