JESSE A. McKEEVER, ET AL. *v.* WASHINGTON
HEIGHTS REALTY CORP., ET AL.
[No. 3, April Term, 1944.]

*Decided May 3, 1944.*

The cause was argued before DELAPLAINE, COLLINS, GRASON, MELVIN, and BAILEY, JJ.

*James M. Earnest*, with whom were *W. Gwynn Gardiner* and *Gardiner, Earnest & Gardiner*, and *J. Dudley Digges* and *Sasscer & Digges* on the brief, for the appellants.

*Joseph C. Mattingly* and *Frank M. Hall* submitted on brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

Jesse A. McKeever and Guy Whiteford, partners in a real estate agency in Washington, brought this suit for injunction in the Circuit Court for Prince George's County to restrain Washington Heights Realty Corporation and Waldo M. Ward, its president, from selling lots in Forest Heights, a suburban development of 136 acres of land on Livingston Road, and from interfering with their own selling thereof during their exclusive agency.

In 1941 Ward applied to Whiteford for a loan of $25,000, to be secured by a deed of trust on the tract of land. Whiteford, finding that he could obtain a loan through David A. Baer, an attorney and expert in building construction, submitted to Ward an offer to arrange for the loan for a period of two years for the following compensation: (1) Commission of $1,000, (2) one-third

interest in a part of the tract set aside for a commercial area, and (3) exclusive agency for the sale of lots "during period of loan, namely, two years." Ward set the prices as follows: 200 lots at $650 each, $130,000; 200 lots at $450 each, $90,000; total, $220,000. He estimated that, in addition to $3,000 payable for interest on the loan for two years the corporation would spend $130,000 for road construction, water supply, advertising, selling and taxes.

On May 28, 1941, the corporation presented to McKeever & Whiteford a written application for a loan for two years, bearing interest at six per cent. On the same day, after Baer reported that his client would have the money available within ten days, an agreement was executed wherein the corporation agreed to give McKeever & Whiteford for procuring the loan the compensation as previousely decided upon: (1) Commission of $1,000 in cash, (2) one-third interest in the commercial area, containing approximately six acres, to be free of encumbrances within two years, and (3) exclusive agency for the sale of lots "during the period of the above described loan." It appears that a few days later Ward asked Baer to make the note payable "on or before" two years from date. Accordingly, on June 9, in his instructions to a title company, Baer requested preparation of a deed of trust to secure a note for $25,000 payable to the order of Virginia Manning "on or before" two years from date, with interest at six per cent. Miss Manning, while employed in the office of McKeever & Whiteford, was merely a straw man in the transaction, and she endorsed the note without recourse, and the note was delivered to Marcus S. Goldnamer, lender of the money. In November, 1941, the corporation paid off the loan, and claimed that the agency was terminated. The Chancellor dismissed the bill of complaint, holding that McKeever & Whiteford had failed to show that the term of the agency was for the unqualified period of two years.

It is elementary that where a contract has been entered into by competent parties, it is not within the power of

either party to rescind it without an option to do so or without the consent of the other party, in the absence of fraud, duress or undue influence, or unless the equities are such that he should not be permitted to enforce it. A meeting of the minds is required not only to make a contract, but also to rescind or modify it after it has been made. No party has a right to rescind or modify a contract merely because he finds, in the light of changed conditions, that he has made a bad deal. A court should not undertake to redraft a written instrument merely because one of the parties thereto has become dissatisfied with its provisions. *Vincent v. Palmer*, 179 Md. 365, 19 A. 2d 183. It is unquestioned that the written agreement of May 28, 1941, read in connection with the note and deed of trust, is the final and complete expression of the agreement of the parties. It is also recognized that the standard of interpretation of an integration is the meaning which would be attached to the integration by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the integration, other than oral statements by the parties of what they intended it to mean. However, where the application of the standard of interpretation to an integration produces an uncertain or ambiguous result, any agreements prior to or contemporaneous with the integration are admissible to establish the meaning of the integration. 1 *Restatement, Contract*, Secs. 230, 238. While parol evidence is generally inadmissible to vary or contradict the terms of a written instrument, and no evidence is admissible for the purpose of adding any provisions to an instrument which purports on its face to be an integration (*Markoff v. Kreiner*, 180 Md. 150, 23, A. 2d 19), yet when any doubt arises from its language as to the intention of the parties, extraneous evidence may be admitted to assist the court in comprehending its meaning. Not only may evidence of facts collateral to the instrument be introduced, but also contemporaneous statements indicating the understanding of the parties as to the meaning of the

language, for such statements are part of the surrounding circumstances. *Lambdin v. Dantzebecker*, 169 Md. 240, 247, 181 A. 353, 102 A. L. R. 277. By no other means would it be possible to comprehend the true meaning of an instrument or the effect to be given to its language. As stated in *Reed v. Merchants Mut. Ins. Co.*, 95 U. S. 23, 24 L. Ed. 348, 349, a consideration of the situation of the parties and other circumstances existing at the time of the execution of an instrument is often necessary to prevent the court, in construing its language, from falling into mistakes and even absurdities.

Even if there were any doubt in this case whether extraneous evidence is admissible to explain the meaning of the agreement of May 28, 1941, there is certainly no question that such evidence is admissible under the principle that a written contract, which through accident or mistake, fails to express the actual agreement of the contracting parties, may be reformed in equity upon clear and satisfactory proof. *Johnson v. National Mut. Ins. Corp.*, 175 Md. 543, 3 A. 2d 460. Justice Holmes made a clear explanation of this qualification of the parol evidence rule in *Goode v. Riley*, 153 Mass. 585, 28 N. E. 228, 229, in these words: "It is not necessarily fatal that the evidence is parol which is relied on to show that the contract was not made as it purports on the face of the document to have been made. * * * So it is settled, at least in equity, that this particular kind of parol evidence—that is to say, evidence of mutual mistake as to the meaning of the words used—is admissible for the negative purpose we have mentioned. And this principle is entirely consistent with the rule that you cannot set up prior or contemporaneous oral dealings to modify or override what you knew was the effect of your writing." So it is held in this State that where a written instrument is intended to carry into execution a memorandum or oral agreement, but fails to express the manifest intention of the parties on account of a mistake of an attorney, agent or draftsman, whether from carelessness, thoughtlessness, forgetfulness or lack of skill, equity will correct the mis-

take to make the instrument express, the real intention of the parties. *Hoffman v. Chapman*, 182 Md. 108, 34 A. 2d 438. We specifically hold that when a written instrument does not finally state the term of an agency, and is signed by one party thereto and completed by the other, to whom it had been entrusted in its incomplete condition for completion, exterinsic evidence is admissible to make certain the actual duration of the term, and to show that the instrument was completed in an unauthorized manner by an attorney or agent, even though there is no evidence of fraud. *Kidder v. Greenman*, 283 Mass. 601, 187 N. E. 42, 88, A. L. R. 1370.

In this case appellants testified that Baer acted without their knowledge and consent, and they never saw the note and deed of trust, but they distinctly understood that they were to have the exclusive agency for the exact period of two years. Baer testified that, while he had been renting an office from McKeever & Whiteford, he was not connected with the agency. He also stated that he did not receive any fee from them, but was paid by Goldnamer. He declared positively that he arranged to have the words "on or before" inserted in the note and deed of trust without mentioning this form to either McKeever or Whiteford. He said that, while he understood they were to have the sales agency, he did not read the agreement and knew nothing about the term of the agency. "I did not see," he explained, "where it concerned them at all what the terms of the loan were. * * * When I agreed on this proposition, I am frank to say the matter never occurred to me. I did not think it had any effect. I see now that it did; but it never passed through my mind at all." From the language of the offer made by McKeever & Whiteford, the application of the corporation for the loan, the explanation made by Baer, and other facts and circumstances of the case, it becomes clear that the parties understood that the term of the agency was to extend without qualification for the period of two years.

It follows, therefore, that appellants were entitled to injunctive relief. Undoubtedly a person may invoke the

aid of a court of equity to prevent the conveyance of real estate where such conveyance would be inequitable. 2 *Story, Equity Jurisprudence,* 12th Edition, Sec. 953. We realize that a court of equity will ordinarily not specifically enforce a contract for personal service, because (1) the mischief likely to result from the enforced continuance of the relationship incident to the service when it has become personally obnoxious to one of the parties is so great that the best interests of society require that the remedy be refused, and (2) the court would find it difficult to enforce such a decree. *Fitzpatrick v. Michael,* 177 Md. 248, 9 A. 2d 639; *Fiedler, Inc., v. Coast Finance Co.,* 129 N. J. Eq. 161, 18 A. 2d 268, 135 A. L. R. 273; *O'Melia v. Berghoff Brewing Corporation,* 304 Mich. 471, 8 N. W. 2d 141, 145 A. L. R. 679. But the mere fact that a contract is one which cannot be specifically enforced by a court of equity, because it would require the performance of continuous duties, does not prevent the court from decreeing an injunction restraining breach of the contract. *Washington Cranberry Growers' Ass'n v. Moore,* 117 Wash. 430, 201 P. 773, 204 P. 811, 25 A. L. R. 1077. It is true that the granting of an injunction lies largely within the sound discretion of the Chancellor acting upon all the facts and circumstances of each particular case. Thus, the Chancellor may refuse to grant an injunction where apparently a full and frank disclosure of all the facts has not been made, or where it appears that the writ will do the complainant little good and cause the defendant great harm. But while the findings of the Chancellor on issues of fact in any particular case are presumptively correct, and his decree will not be disturbed unless it clearly discloses an improvident exercise of judicial discretion, nevertheless if it is manifest that there has been an abuse of discretion showing a disregard of the facts or an obvious error in the application of the principles of equity, the Court of Appeals will reverse the decree. *Western Maryland Dairy v. Chenowith,* 180 Md. 236, 23 A. 2d 660.

Inasmuch as the term of the sales agency has expired, it is now too late to grant injunctive relief. But the Chan-

cellor should have assumed jurisdiction, not only to grant the injunction, but also to award appellants any compensation to which they are entitled. Under a prayer for general relief, the court is not confined to the relief which is specifically prayed for, but may grant any needed relief which is not inconsistent with the special prayers. Even where the nature of the case is such that the prayer for specific relief cannot be granted, relief may be granted under the general prayer suitable to the peculiar nature of the case. While a complainant is not entitled to relief beyond the general scope and object of the bill or inconsistent with it, the court is left free to adopt any mode by which it can most readily and effectually administer that relief which the equity of the case may require. *Townshend v. Duncan*, 2 Bland 45, 48; *Polk v. Rose*, 25 Md. 153, 162, 89 Am. Dec. 773; *Sloan v. Safe Deposit & Trust Co.*, 73 Md. 239, 249, 20 A. 922; *Boehm v. Boehm*, 182 Md. 254, 34 A. 2d 447; *Borssuck v. Pantaleo*, 183 Md. 148, 36 A. 2d 527. It is an established rule that when a court of equity has once rightfully assumed jurisdiction, it will retain its jurisdiction in order to settle all questions that might arise out of the subject in controversy and give the complainants complete relief, even in those respects in which it would not have had jurisdiction originally, thereby preventing a number of conflicting proceedings concerning the same subject. *Keighler v. Ward*, 8 Md. 254, 266; *Reed & Fibre Products Corporation v. Rosenthal*, 153 Md. 501, 521, 138 A. 665.

The record in this case discloses that, while the commission of $1,000 has been paid, the corporation has not yet conveyed the one-third interest in the commercial area, and the real estate agents are claiming commissions and damages. Where land, or any estate therein, is the subject-matter of an agreement, the equitable jurisdiction is firmly established. Whenever a contract concerning real estate is in its nature and incidents entirely unobjectionable, it is as much a matter of course for a court of equity to decree its specific performance as it is for a court of law to give damages for its breach. 4 *Pomeroy, Equity*

*Jurisprudence,* 5th Edition. Sec. 1402. The reason for the rule is that the measure of damages in a court of law for breach of a contract for conveyance of land is uncertain, and there can be no adequate remedy other than in a court of equity where specific performance can be decreed. *Maryland Clay Co. v. Simpers,* 96 Md. 1, 7, 53 A. 424. Therefore, Washington Heights Realty Corporation should be required to convey to McKeever & Whiteford the one-third interest in the commercial area to which they are entitled. The granting of a decree of specific performance, like an injunction, rests in the sound discretion of the Chancellor, exercised upon a consideration of all the circumstances of the case. But this discretion is not an arbitrary or capricious discretion, but a judicial discretion to be exercised in accordance with established principles of equity. *Somerville v. Coppage,* 101 Md. 519, 61 A. 318; *Anshe Sephard Congregation v. Weisblatt,* 170 Md. 390, 183 A. 107.

The Chancellor should also award to appellants the commissions to which they are entitled. According to the record, Ward represented that the lots in the development had been approved for loans guaranteed by the Federal Housing Administration. Appellants relied upon that representation, but later discovered that no such approval could be obtained. When it was learned that some of the purchasers were unable to obtain such loans, the District Attorney demanded that their deposits be returned. When a person intentionally misrepresents a material fact or produces a false impression in order to mislead another, or to entrap or cheat him, or to obtain an undue advantage of him, there is a positive fraud. But as Justice Story said: "Whether the party, thus misrepresenting a material fact, knew it to be false, or made the assertion without knowing whether it were true or false, is wholly immaterial; for the affirmation of what one does not know or believe to be true is equally, in morals and law, as unjustifiable as the affirmation of what is known to be positively false. And even if the party innocently misrepresents a material fact by mistake, it is equally conclusive, for it

operates as a surprise and imposition upon the other party. 1 *Story, Equity Jurisprudence,* 12th Edition, Secs. 192, 193. However, appellants did not pray for recission of the contract. They ask that the corporation be required by the court to pay them their commissions, not only on the sales for which the purchase price has been paid, but also on the sales which were not consummated on account of the fact that the purchasers were unable to obtain loans guaranteed by the Federal Housing Administration. Where an agent has done all he undertook to do and has procured a buyer as contemplated, he cannot be deprived of his right to compensation by the fact that the sale has fallen through on account of the inability or unwarranted refusal of the principal to consummate the sale according to the prescribed terms. *Singer Construction Co. v. Goldsborough,* 147 Md. 628, 638, 128 A. 754.

Appellants are also entitled to any damages which may have been caused by breach of the agreement or interference with their work as sales agents. A party may commit breach of contract, not only by failing to perform it in whole or in part or by disabling himself from performing it, but also by making it impossible for the other party to perform his part. If one party is guilty of a substantial breach of contract, the other party has the right to treat the contract as rescinded and recover as damages the profits which he would have received through full performance. *Anvil Mining Co. v. Humble,* 153 U. S. 540, 14 S. Ct. 876, 38 L. Ed. 814. However, if the injured party does not choose to exercise the right of rescission, to which he is entitled by reason of substantial breach by the other, such a waiver of the right to rescind is not in itself a waiver of the right to claim damages. The American Law Institute states that damages are recoverable for losses caused, or for profits and other gains prevented, by breach of contract only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty, but comments that where there is a contract of agency for the sale of property on commission, the profits which the agent would

have made if he had not been discharged can often be proved with reasonable certainty, especially if the agency is an exclusive one. Evidence as to sales made before the breach, and as to sales made by the principal after the breach, may be such as to make possible a reasonably accurate estimate of the commissions which the agent has been prevented from earning. 1 *Restatement, Contracts,* Sec. 331. It is our conclusion that where a principal wrongfully terminates a contract of agency for the sale of real estate, the agent is entitled to recover as damages not only the value of such services as he had already rendered, together with such disbursements as he had made in his employer's behalf, but also such prospective profits as he can show would reasonably have been his except for the wrongful interference by the principal. *Isern v. Gordon,* 127 Kan. 296, 273, P. 435, 64 A. L. R. 391, 395.

For these reasons we reverse the decree of the Chancellor dismissing the bill, and remand the cause for the taking of any additional testimony that may be required, and for the passage of a decree granting specific performance and an award of any commissions and damages to which appellants may be entitled.

> *Decree reversed, and cause remanded with costs.*