MID-STATE ELECTRIC, INC., Plaintiff,

v.

H.L. LIBBY CORPORATION,
Defendant/Third–Party
Plaintiff,

v.

Richard MORGAN, Sunray Electric
Supply Co. and John Lucarini,
Third–Party Defendants.

Civ. A. No. 88–1138.

United States District Court,
W.D. Pennsylvania.

March 11, 1992.

See also 141 F.R.D. 255.

Paul Barnett, Cumberland, Md., David Salzman, Pittsburgh, Pa., for plaintiff.

Harold Gondelman, Pittsburgh, Pa., Bryan Bolton, Baltimore, Md., for defendant.

Thomas E. Reilly, Gregory M. Devine, Pittsburgh, Pa., for third party defendants.

Richard Morgan, pro se.

## MEMORANDUM OPINION

LEWIS, District Judge.

This dispute arises from the renovation of a shopping center in LaValle, Maryland. Defendant H.L. Libby Corp. ("Libby") was the general contractor for the renovation of that shopping center. Plaintiff Mid–State Electric, Inc. ("Mid–State") was a subcontractor for electrical work on that project. Mid–State has asserted two claims against Libby—one for breach of contract and one for recovery in quasi-contract for unjust enrichment.

In response, Libby has joined two third-party defendants in the case and has coun-

terclaimed against Mid–State. Specifically, it has asserted a breach of contract claim, a fraud claim and two RICO claims against Mid–State; a fraud claim and two RICO claims against third-party defendant Richard Morgan; and a fraud claim against third-party defendant Sunray Electric Supply Co. ("Sunray").

Currently pending before the court is a motion for partial summary judgment (as to liability only) filed by Libby on its breach of contract claim against Mid–State. This motion presents exactly the same parol evidence rule issue as does an earlier motion in limine filed by Libby. Granting Libby's motion would effectively determine liability (or lack thereof) on Mid–State's claims against Libby, too, since their claims both involve the same subcontract—each side arguing that the other breached the contract.

Libby points to the subcontract and the specifications entered into between Mid–State and itself as the basis for its motion. Page 16–1 of the specifications, subsection 1.02, point 10 provides that Mid–State would provide a new emergency generator. Page 16–6, subsection 2.06 of the specifications provides that Mid–State would "furnish and install the lighting fixtures as noted on Drawings." Article 7, paragraph A of the subcontract provides that "No part of this Subcontract shall be subcontracted by the Subcontractor except with the express prior written approval of the Contractor."[1] Both Mid–State and Libby agree that the subcontract and specifications as written and signed contain these provisions.

Both Mid–State and Libby agree that Mid–State did not provide a new emergency generator. Rather, the generator installed in the Zayre's store at the shopping center in question came from another company. Similarly, Mid–State and Libby agree that Mid–State did not furnish the lighting fixtures. It only installed them. (Third-party defendant Sunray furnished them.) Furthermore, it is undisputed that Mid–State did not obtain the prior written approval of Libby before hiring John Lucarini's company, Lucarini Electric, as a sub-subcontractor for certain electrical work.

Libby thus claims that Mid–State breached each of these provisions. Mid–State seeks to admit evidence outside of the exact language of the contract to explain why, in its view, its failure to adhere to the language of the contract does not result in its being liable to Libby. Libby argues that as a matter of law such parol evidence is not admissible.

## I. *The Integration Clause and the Parol Evidence*

The subcontract between Mid–State and Libby contains the following integration provision:

> It is expressly agreed that this Subcontract constitutes the entire and only agreement between the parties hereto, superseding any previous agreements or understandings; that there are no agreements, understandings or covenants between the parties of any kind, nature or description, expressed or implied, oral or otherwise, pertaining to the Work hereunder, which have not been set forth herein; and that this Subcontract cannot be modified, altered, amended, changed or cancelled nor any provision hereof waived or abrogated, except by an instrument in writing duly executed and acknowledged on behalf of the Contractor by a corporate officer or by a representative duly authorized in writing by a corporate officer.

Article 23, paragraph B.

The other relevant contract provisions and points upon which the parties expressly agree are set forth above. In addition, however, Mid–State has submitted an uncontroverted affidavit from Robert Stangl, its owner, which contains facts which must

---

1. The subcontract also expressly prohibits modification or amendment except in writing and signed by a corporate officer. Article 3 and Article 23, Section B. The court will not in this opinion address Libby's arguments that Mid–State breached the subcontract by performing extra work without written authorization because of a lack of record evidence regarding that issue.

be taken as true for the purposes of this summary judgment motion. Construing all facts in favor of Mid–State as non-movant, as this court must, the affidavit reveals the following:

Stangl personally handled all matters regarding Mid–State's bid for the LaValle job. Stangl says that his first bid, which was accepted by Richard Morgan (whose signature on contracts was approved and ratified by Libby's president, H.L. Libby), was for all of the electrical work, but that lighting fixtures were to be supplied by others.

Thereafter, Stangl says, H.L. Libby contacted him and negotiated a lower bid, explaining that Mid–State need not provide an emergency generator as part of its contract because Libby had already ordered one from another company. Because the emergency generator was deleted, the bid was reduced by some $48,000. This was in late April, 1986.

Mid–State proceeded to perform work in accordance with the subcontract, but the actual subcontract which is the result of this suit was not presented to Stangl until May 20, 1986, when the first payment was due to Mid–State. Stangl did not bother to read the subcontract at that time. He simply signed it. As Mid–State admits, the written subcontract includes provisions requiring it to provide lighting fixtures and an emergency generator. Stangl states:

At the time of the execution of the document I relied on the integrity and followed the usual industry practice herein that the general contractor, or in this case, H.L. Libby Corporation, to [sic] properly prepare the document pursuant to the original bid proposal and the modifications. That the electrical subcontract documents as executed does [sic] not, in fact, reflect the entire contract as entered into between the parties.

Stangl Affidavit ¶ 6.

Documents of record indicate that Libby (or some representative thereof) ordered the generator and lighting fixtures at issue from the companies which supplied them, and, further, that such orders were placed before Libby and Mid–State signed the written subcontract in May, 1986.

## II. *The Parol Evidence Rule*

The parties agree that Maryland law applies. They also generally agree that "when the contractual language is clear and unambiguous, and in the absence of fraud, duress or mistake, parol evidence is not admissible to show the intention of the parties to vary, alter or contradict the terms of that contract." *General Motors Acceptance Corp. v. Daniels,* 303 Md. 254, 261–62, 492 A.2d 1306, 1310 (1985). Rather, when contract language is clear and unambiguous (which is to be determined objectively), the court must review only the contract itself to determine liability. *Id.* at 262, 492 A.2d at 1310.

In fact, Mid–State quotes the Maryland Court of Appeals as saying:

The law is clear, absent fraud, duress or mutual mistake, that one having the capacity to understand a written document who reads and signs it, or, without reading it or having it read to him, signs it, is bound by his signature in law, at least. An integrated agreement may not be varied by parol where there is no mutual mistake, nor may the parties place their own interpretation on its meaning or intended meaning.

*Creamer v. Helferstay,* 294 Md. 107, 123–24, 448 A.2d 332, 340 (1982).

Despite this, Mid–State claims that the evidence of Stengl's antecedent agreements with Libby should not be excluded for three reasons.

First, Mid–State asserts that it had the right to rely on Libby, as the general contractor, to prepare a contract document in accordance with the parties' prior discussions. Therefore, Mid–State should not be held to the terms of the contract it signed. In support of this contention, it cites *McKeever v. Washington Heights Realty Corp.,* 183 Md. 216, 37 A.2d 305 (1944). The court in *McKeever* did admit parol evi-

dence in a contract dispute over the length of a term of agency. It did so because the language in the contract at issue was ambiguous, however. Therefore, despite the general rule that parol evidence is inadmissible to vary or contradict the terms of a written contract, the court ruled that:

> when any doubt arises *from [the contract's] language* as to the intention of the parties, extraneous evidence may be admitted to assist the court in comprehending its meaning. Not only may evidence of facts collateral to the instrument be introduced, but also contemporaneous statements indicating the understanding the parties as to the meaning of the language, for such statements are part of the surrounding circumstances.... By no other means would it be possible to comprehend the true meaning of an instrument or the effect to be given to its language.

*McKeever*, 183 Md. at 220–21, 37 A.2d at 308–09. (Emphasis added.)

In contrast, no one in this case contends that the language of the subcontract is ambiguous. Indeed, even if such a contention was advanced, it would fail, for the contract language at issue is clear.

■ Second, Mid–State claims that parol evidence should not be excluded because there are allegations of mutual mistake or fraud in this case. Libby does not agree that there was any mistake in the contract documents, which negates any argument of mutual mistake. *See Ray v. William G. Eurice & Bros.*, 201 Md. 115, 125, 93 A.2d 272, 278 (1952). Rather, at best, there is a unilateral mistake on Mid–State's part, with Stangl signing a contract containing terms he did not know were there.

■ A unilateral mistake does not permit introduction of parol evidence. *Creamer*, 294 Md. at 125, 448 A.2d at 341; *Ray*, 201 Md. at 125, 93 A.2d at 278. The only exception to this general rule is that a

court may relieve a party from a unilateral mistake of a clerical, mechanical or technical nature. *See Creamer*, 294 Md. at 127–31, 448 A.2d at 342–44. The mistake at issue in this case—a failure to notice that major provisions regarding the subcontractor's responsibilities under the contract were inconsistent with what had been discussed—is hardly clerical, mechanical or technical.

[5] Mid–State is correct that there are allegations of fraud present in this case. Mid–State has not alleged that Libby engaged in any fraud in connection with the subcontract or any other sense, however.[2] In fact, Mid–State has advanced the subcontract as the basis for its claims against Libby. It can hardly be said to be trying to avoid the subcontract because of fraud, which might justify the introduction of parol evidence. In his affidavit, Stangl indicates his belief that Libby is attempting to perpetrate a fraud on Mid–State by stating: "I am now of the opinion that the electrical sub-contract as presented is the result of mutual mistake and/or an attempt by the H.L. Libby Corporation to perpetuate a fraud on the Plaintiff, Mid–State Electric." Stangl Affidavit, ¶ 9. An affidavit setting forth opinions or conclusions rather than facts may be disregarded. *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir.1985); *Drexel v. Union Prescription Centers, Inc.*, 582 F.2d 781, 789–90 (3d Cir.1978). *See also Martinez v. Junta de Planificacion de Puerto Rico*, 736 F.Supp. 413, 419 (D. Puerto Rico 1990). This opinion does not suffice to indicate fraud, even if it is coupled with the many fragile inferences which must be drawn from the facts set forth in the affidavit in order to support any allegation of impropriety.

■ Finally, Mid–State claims that under the Uniform Commercial Code (the "UCC") it is permitted to introduce evidence of course of dealing or performance to "explain or supplement" the terms of an

---

**2.** At best, Stangl's affidavit might be read to imply that Libby knew that the subcontract obligations which it claims Mid–State breached were not meant to be part of the written document but nonetheless chose to enforce those obligations once Mid–State decided to sue for

payment under the contract. It implies neither fraud in the inducement nor in the execution, and Mid–State does not argue the presence of either type of fraud in its briefs. *See* J. Calamari & J. Perillo, *Contracts* § 3–7(c) at 159–60 (3d Ed.1987).

integrated writing. Maryland Ann.Code Art. 95B, Section 2–202. The subcontract at issue is for the provision of services, not goods, however, so the UCC does not control this court's decision in this regard. Further, even if this case were governed by the UCC, Mid–State is not trying to "explain" or "supplement" the subcontract at issue. Its attempt to directly contradict the terms of the subcontract thus does not come within the provisions of section 2–202.

It is apparent, therefore, that this case is not the sort of case in which courts applying Maryland law have carved out exceptions to the general rule prohibiting the introduction of parol evidence in a dispute involving an integrated written contract. Mid–State will not be permitted to introduce parol evidence regarding agreements and discussions preceding the written subcontract at trial.

### III. *Conclusions*

Despite this ruling, Libby is not entitled to summary judgment on either its or Mid–State's breach of contract claim. Mid–State has advanced sufficient evidence which might otherwise be admissible to convince the court that material facts are in dispute regarding liability for breach of the subcontract.

The court agrees with Libby that summary judgment is appropriate on Mid–State's unjust enrichment claim, however. Under Maryland law, recovery for unjust enrichment is generally not available when a written contract is involved. *Mass Transit Administration v. Granite Construction Co.*, 57 Md.App. 766, 775–76, 471 A.2d 1121, 1126 (1984). In cases in which parol evidence is admissible to vary the written contract, Maryland courts have permitted claims of unjust enrichment to proceed even though a written contract existed, 57 Md.App. at 778–79, 471 A.2d at 1127–28, but this is the only exception to the general rule noted by either Mid–State or the court in *Mass Transit.* This court has already determined that parol evidence regarding antecedent agreements will not be admissible in this case. Therefore, the general rule prohibiting a claim of unjust enrichment governs.

An appropriate order will follow.

### ORDER

AND NOW, this 11th day of March, 1992, upon consideration of the motion in limine filed by defendant H.L. Libby Corporation ("Libby") on May 12, 1989, and the motion for summary judgment filed by Libby on February 23, 1990, and upon further consideration of plaintiff's responses thereto,

IT IS HEREBY ORDERED that said motions are GRANTED in part and DENIED in part. Specifically, plaintiff Mid–State Electric, Inc. ("Mid–State") will not be permitted to introduce parol evidence of agreements and discussions preceding its subcontract with Libby. This does not mean that the court will grant summary judgment to Libby on the breach of contract claims in this case, however. Rather, Libby's motion for summary judgment is granted as to Mid–State's unjust enrichment claim only. Judgment shall be and hereby is entered in favor of defendant H.L. Libby Corporation and against plaintiff Mid–State Electric, Inc. on Mid–State's unjust enrichment claim only. The breach of contract claims asserted by Mid–State and Libby will proceed to trial.